**In the Matter of Richard L. KOCHELL, Debtor.**

**Bankruptcy No. MM7–82–00560.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 26, 1985.

---

Thomas J. Basting, Brennan, Steil, Ryan, Basting & MacDougall, S.C., Janesville, Wis., for debtor.

Timothy A. Nettesheim and William J. Rameker, Murphy & Desmond, S.C., Madison, Wis., for trustee.

Cheryl E. Sullivan, Supervisor, Clearance Unit, State of Wis., Dept. of Revenue, Madison, Wis., Beth Sabbath, Trial Atty., Tax Div., Washington, D.C., for I.R.S.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

The trustee has filed a motion for determination of tax liability, asking the court to determine whether the estate was liable for additional taxes under Internal Revenue Code ("IRC") sections 408(f) and 72(m)(5) (26 U.S.C. §§ 408(f), 72(m)(5)). A hearing was held before the court on March 11, 1985 with the United States opposing the trustee's motion. The court established a briefing schedule and the parties have complied with that schedule.

On December 23, 1982, 26 B.R. 86, this court held that the rollover individual retirement account ("IRA") and pension account of the debtor were not exempt property under section 522(d)(10)(E) of the Bankruptcy Code (11 U.S.C. § 522(d)(10)(E)) and therefore became property of the estate at the time the debtor filed his petition on April 6, 1982. That decision was subsequently affirmed by the U.S. District Court, 31 B.R. 139, and the Seventh Circuit Court of Appeals, 732 F.2d 564. Approximately $190,000 from the IRA and $15,000 from the pension account were distributed to the estate in 1984, triggering income tax recognition.

I. IRC § 1398 applies to the taxation of bankruptcy estates in cases under chapters

7 and 11 in which the debtor is an individual. Section 1398(c)(1) states:

Computation and payment of tax. Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

Section 1398(f)(1) provides:

Transfer to estate not treated as disposition. A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

Section 1398(g) reads: [1]

*Estate succeeds to tax attributes of debtor.* The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

(1) Net operating loss carryovers....

(2) Charitable contributions carryovers....

(3) Recovery exclusion....

(4) Credit carryovers, etc....

(5) Capital loss carryovers....

(6) Basis, holding period, and character of assets. In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

(7) Method of accounting....

(8) Other attributes. Other tax attributes of the debtor, to the extent provided

in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.[2]

The United States has not argued that section 1398(g)(6)'s "character of assets" covers the penalty tax attribute of IRA's and pension accounts held by an individual. "Character" of an asset is generally construed to mean whether an asset is capital (section 1221), depreciable (section 1231), or subject to ordinary income treatment. "Character" may also refer to whether an asset is considered "tainted" with ordinary income treatment.[3]

Congress has sought to prevent IRA's and pension accounts from being used as collateral or otherwise assigned to creditors. Section 408(e)(4) applicable to constructive distributions from IRA's states: "[i]f, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual." The purpose of this rule is to prevent taxpayers from taking advantage of the tax sheltering potential of IRA's while continuing to enjoy the benefit of those assets. A similar rule applied to constructive distributions from pension plans under former section 72(m)(4). TEFRA, effective September 3, 1982, introduced a more complicated rule in which limited borrowing against pension plan accounts is now permitted without triggering a constructive distribution. Rather than using a character taint device, these sections treat the act of assignment of an individual's rights in an IRA or pension account as the event triggering a construc-

---

**1.** Section 1398(g) is an expansion of Bankruptcy Code section 346(i).

**2.** The Treasury Department has not issued regulations or pronouncements of any type whatsoever on section 1398. (Lexis search).

**3.** An example is section 306 preferred stock distributed by a corporation in a "bailout" of corporate earnings. Without the "taint" the shareholder could receive the preferred stock as a

stock dividend (a nonrecognition transaction) and sell it to a third party, getting capital gain treatment. The shareholder's control of the corporation would remain unchanged, but he could effectively assign his right to receive corporate earnings without paying tax at ordinary income rates. Congress uses section 306 and similar sections to redefine the character of assets received in certain transactions in order to discourage behavior which is perceived as abusive.

tive distribution. Other events, such as testamentary disposition of those assets are not triggering events. Therefore, section 1398(g)(6) cannot be used by the United States to apply the penalty tax provisions to the bankruptcy estate.

Although neither party so argues, the question is basically whether the maxim of statutory construction *expressio unius est exclusio alterius* is to be given effect in this instance.[4] Since the fact of the debtor being under the age of 59 ½ years cannot be fit into any of the enumerated tax attributes carried over to the estate by section 1398(g), it must be decided whether the general language of section 1398(f)(1) controls the later specific listing. Note that section 1398(g) does not say that the estate shall take into effect all of the debtor's tax attributes. The implication is that some tax attributes of the debtor are not to be included.

Policy analysis favors the employment of the maxim. The pre-retirement disincentive which Congress intended to create is unnecessary and disfunctional where a bankruptcy court has ordered a debtor to turn over retirement account assets to the trustee. Where a taxpayer dies, the penalty tax does not apply to distributions to beneficiary(s). By analogy, the bankruptcy of a debtor should not result in the penalty tax being applied to the "beneficiaries" of the bankruptcy estate. On the other hand, it may be possible to construct a set of circumstances in which an individual utilizes chapter 11 to free assets tied up in a large rollover IRA and escape the penalty tax. Since there is no evidence or suggestion that is the case here, the court need not address the policy considerations of such a case.

II. IRC § 408(f) provides:

*Additional tax on certain amounts included in gross income before age 59 ½.*

(1) Early distributions from an individual retirement account, etc. If a distribution from an individual retirement account or under an individual retirement annuity to the individual for whose benefit such account or annuity was established is made before such individual attains age 59½, his tax under this chapter for the taxable year in which such distribution is received shall be increased by an amount equal to 10 percent of the amount of the distribution which is includible in his gross income for such taxable year.

(2) Disqualification cases. If an amount is includible in gross income for a taxable year under subsection (e) and the taxpayer has not attained age 59 ½ before the beginning of such taxable year, his tax under this chapter for such taxable year shall be increased by an amount equal to 10 percent of such amount so required to be included in his gross income.

■ The statute clearly provides that a distribution from an IRA is subject to the penalty tax only if the individual for whose benefit the account was established actually receives the distribution. The use of the word "his" in the penalty tax provision of section 408(f)(2) suggests that only individuals and not entities are subject to that tax. The constructive distribution rule of section 408(e)(4) discussed *supra* is consistent with this interpretation, since the tax is imposed on the individual account owner upon assignment to any entity or individual.[5]

III. IRC § 72(m)(5) prior to the tax reform act of 1984 stated:

(A) This paragraph shall apply—

(i) to amounts ... which are received from a qualified trust described in section 401(a) or under a plan described in

---

**4.** An exhaustive search revealed only two slip opinions that had mentioned section 1398. There is no development of the scope of section 1398(g) in any case, nor in the legislative history of the Bankruptcy Tax Act 1980.

**5.** Section 408(e)(4) states:

If, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual.

section 403(a) and which are received by an individual, who is, or has been, a key employee, before such individual attains the age of 59 ½ years, for any reason other than the individual's becoming disabled (within the meaning of paragraph (7) of this subsection), but only to the extent that such amounts are attributable to contributions paid on behalf of such individual (other than contributions made by him as an owner-employee) while he was a key employee in a top heavy plan....

(B) If a person receives an amount to which this paragraph applies, his tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of the amount so received which is includible in his gross income for such taxable year.

(C) For purposes of this paragraph, the terms 'key employee' and 'top-heavy plan' have the same meanings as when used in section 416.

 The statutory penalty tax unambiguously applies to an individual who was at one time a "key employee" and who subsequently receives a distribution. The statute further refers to contributions paid on the behalf of a "key employee." IRC § 416 referred to in the statute is effective only for years after December 31, 1983. Clearly, the term "key employee" did not exist as a defined term under the IRC at the time the contributions were made on Kochell's behalf. The Commissioner of Internal Revenue may not, by regulation or otherwise, apply a statute retroactively when Congress did not intend the statute to have retroactive effect. *Commissioner of Internal Revenue v. Commodore, Inc.*, 135 F.2d 89 (6th Cir.1943). Thus, even if the bankruptcy estate were to stand in the shoes of the debtor, the penalty tax would not apply.

For the reasons set out herein, the trustee's proposed findings of fact and order are hereby adopted.