EASTERBROOK, Circuit Judge.
 

 We must decide whether the penalty tax under 26 U.S.C. § 408(f)(1) applies to a bankruptcy trustee’s withdrawal of funds from the debtor’s Individual Retirement Account (IRA). Our prior decision in this case, 732 F.2d 564 (1984), held that the Trustee may reach the assets in the IRA for the benefit of the debtor’s creditors. The Trustee did so, and the United States wants the Trustee to pay not only the income tax on the withdrawn assets — a tax the Trustee concedes is due — but also the 10% tax under § 408(f)(1). This statute provides that a distribution “from an [IRA] ... to the individual for whose benefit such account or annuity was established ... be
 
 *85
 
 fore such individual attains age 59V2” triggers the extra tax. The bankruptcy court, 53 B.R. 250, and the district court, 55 B.R. 380, held that the Trustee’s use of the funds is not a payment “to the individual for whose benefit such account or annuity was established” and therefore is not within § 408(f)(1). We disagree with this conclusion because in tax law a payment attributable to a person’s earnings that bypasses him and goes to his designees is taxed as a payment to him. See
 
 Douglas v. Willcuts,
 
 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3 (1935);
 
 Lucas v. Earl,
 
 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930);
 
 Old Colony Trust Co. v. CIR,
 
 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929).
 

 Old Colony
 
 dealt with income taxes paid by the employer on an employee’s behalf; the Court held that the taxes paid were also the employee’s taxable income. In
 
 Lucas
 
 a wage earner assigned half of his earnings to his wife; the Court held that he was liable for the taxes on all. A trust was formed to pay alimony in
 
 Douglas;
 
 the Court held that the settlor must pay tax on the trust’s income even though he did not receive the money. See also 26 U.S.C. § 677. These and related cases show that appointments of income from employers and trusts to third parties are treated as three-cornered transactions: the payment of the money to the person who earned it (or has the power of appointment), followed by a transfer to the third party. Sometimes, this is called a “constructive distribution” to the taxpayer, another phrase for the same concept. So if Kochell had turned over his IRA to a creditor outside of bankruptcy, or a creditor had attached the account (the parties concede that this is possible), the turnover would have been treated as a distribution to Kochell followed by Kochell’s payment of his debts. Bankruptcy ordinarily mirrors such non-bankruptcy entitlements; it is just a collective proceeding among creditors to apportion limited assets. Nothing about the bankruptcy process changes the appropriate characterization of the turnover of money held in a trust such as an IRA.
 

 The Trustee maintains that
 
 Douglas
 
 and like cases depend on the existence of a benefit. The trust in
 
 Douglas
 
 discharged the settlor’s liability to pay alimony. The employer in
 
 Old Colony
 
 discharged the employee’s obligation to pay taxes. Cases of this sort usually entail some benefit— why else did the person appoint the income to the third party? — but the benefit is not essential. If a person required his employer to pay one-third of his income to a stranger to be selected at random by the employer, the money would still be taxable to the employee. Cf.
 
 Schuster v. CIR,
 
 800 F.2d 672 (7th Cir.1986) (income received and paid over to a religious order by a nun under a vow of poverty is taxable to the nun).
 

 There is at any rate potential benefit for the bankrupt. The Trustee paints a static picture of a bankrupt with debts exceeding his assets. The money in the IRA will pay the creditors; the debtor will be discharged; what “benefit” to the debtor could the use of the IRA provide? One answer is that not all debts are dischargea-ble. The obligation to pay alimony, for one, is not, 11 U.S.C. § 523(a)(5), and Koc-hell’s debts include alimony. At the time he filed his petition in bankruptcy, Dr. Koc-hell was earning about $36,000 per month and had expenses of some $34,000. See 732 F.2d at 565. The Trustee suggested at oral argument that the petition was filed so that Kochell could put his affairs in order and make appropriate distributions at the time of his divorce. If the alimony due is not paid in bankruptcy, Kochell must pay it later. The application of the proceeds of the IRA to this debt will produce a benefit to Kochell. A second answer is that not all bankrupts have insufficient assets to pay their debts. Sometimes there is money left over, especially in Chapter 11 reorganizations. (This is a Chapter 7 case, but the Trustee does not suggest that there is a material difference in tax treatment between chapters.) The transfer of leftover funds to the debtor at the end of the bankruptcy may be a substantial benefit from invading the IRA.
 

 
 *86
 
 There is a third potential benefit to the debtor. The Trustee looks at things as they were when Kochell filed his petition. The benefit may have occurred earlier, because the anticipation of a distribution will affect people’s conduct. If the funds in an IRA could be reached in bankruptcy without penalty, then potential creditors would treat would-be borrowers as wealthier. More assets would be available in the event of default. This extra wealth would induce them to make extra loans. The borrower would receive the “benefit” of his IRA in advance, through the things he could buy with the money lent. The bankruptcy would be a winding-up, as the creditors reached the extra wealth in the IRA on which they had counted. That the process of paying the creditors would not produce an extra benefit to the debtor would be immaterial; one benefit is quite sufficient.
 

 The structure of the statute supports the view that any use of an IRA’s funds for creditors triggers the penalty tax. If the owner of the account “uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual.” 26 U.S.C. § 408(e)(4). A security interest in an IRA is little more than a promise not to withdraw the assets in the interim and to make the assets preferentially available to the creditor. Because a promise of this sort is treated as an immediate distribution, with income and penalty taxes due, it would be bizarre to conclude that an
 
 actual
 
 distribution to creditors does not require both taxes. Section 408, which governs IRAs, treats distributions “to the individual” as the only alternative to distributions to beneficiaries— such as to a spouse on the person’s death, 26 U.S.C. § 408(a)(7). The statute catalogs some permissible payees and some events that allow distributions without additional tax; the residual category is distributions “to the individual”. Neither the language nor the structure of the statute suggests that there is a category of premature distributions to third parties that escapes the additional tax. The penalty tax is designed both to discourage early distributions and to compensate the Treasury for the revenue lost while the funds in the IRA earned interest free of taxes. Neither purpose would be served if funds could be distributed to creditors, without additional tax, before the owner was 59V2 years old.
 

 There is very little legislative history of the penalty tax provision or the meaning of “to the individual”, but what little there is supports the conclusion that “to the individual” includes payments appointed to third parties. The conference report described the triggering event as “a premature distribution (or deemed distribution) from the account before the individual attains age 59V2”. H.R.Conf.Rep. No. 93-1280, 93d Cong., 2d Sess. 339 (1974), U.S. Code Cong. & Admin.News 1974, pp. 4639, 5119. The language of § 408(f)(1) was modeled on a similar portion of 26 U.S.C. § 72(m)(5)(A)(i), which governs “Keogh” (“H.R. 10”) plans. Section 72 imposes an extra tax if the person who established the plan “receives” an early distribution. When Congress enacted § 408(f), the regulation construing the meaning of § 72(m)(5) provided:
 

 Amounts attributable to contributions paid on behalf of an owner-employee and which are paid to a person other than the owner-employee before the owner-employee dies or reaches the age of 59V2 shall be considered received by the owner-employee for purposes of [the penalty tax].
 

 26 C.F.R. § 1.72-17(e)(l)(ii). See also T.D. 6985, 1969-1 Cum.Bull. 66, 67. There is not a clue in the legislative history of § 408(f) that the new statute was to apply to some more narrow category of distributions. Payments “receive[d]” by the individual (§ 72) and payments “to the individual” (§ 408) cover the same ground.
 

 The Trustee’s reply to all of this is to say, in effect: “So go tax Dr. Kochell. He is the ‘individual’, and if a distribution works to his benefit he should pay the tax. The bankruptcy estate is just the waystation between the IRA and the creditors.” Yet the Trustee concedes that the estate must pay the income tax on the funds in the IRA, and there is no good reason why the income tax on the withdrawn funds is
 
 *87
 
 an obligation of the estate while the penalty tax on the same withdrawal lands on the debtor personally. It was the Trustee who reached the account, at the instance of the creditors. The tax falls on the estate just as the tax on a salary check or bond coupon does. Under 26 U.S.C. § 1398(f)(1) a
 

 transfer ... of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.
 

 When Kochell filed his petition in bankruptcy, the estate succeeded to the IRA. This was not a taxable event. Under § 1398(f)(1) the estate was thereafter “treated as the debtor”. So when the Trustee invaded the IRA, the estate became liable for the income tax. For the same reasons the estate as “the debtor”— and thus as the “individual” under § 408(f) —became liable for the addition to tax. Kochell personally was out of the picture.
 

 REVERSED.