**In re James RUETER and Eva Rueter, Debtors.**

**James RUETER and Eva Rueter, Appellants,**

v.

**Jerome E. ROBERTSON, Trustee, Appellee.**

**No. C–93–0297 MHP.**

United States District Court, N.D. California.

Aug. 19, 1993.

Craig M. Prim, Stephen T. O'Neill, Murray & Murray, Palo Alto, CA, Maureen C. Dellinger, Stephen J. Martin, Pillsbury Madison & Sutro, San Francisco, CA, for debtors.

Michael St. James, Margaret L. Nordquist, Rosenblum Parish & Isaacs, San Francisco, CA, for trustee.

### *MEMORANDUM AND ORDER*

PATEL, District Judge.

This is an appeal by James Rueter and Eva Rueter ("Debtors") from an August 13, 1992 order of the United States Bankruptcy Court for the Northern District of California, Judge Marilyn Morgan presid-

ing, ("Bankruptcy Court") granting a motion regarding certain tax attributes brought by James E. Robertson, trustee in bankruptcy of debtors' estate ("Trustee") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* This court has jurisdiction to hear Debtors' appeal under 28 U.S.C. § 158(a). Having reviewed the arguments and submissions of the parties, and for the reasons explained below, the court REVERSES the order of the Bankruptcy Court.

## BACKGROUND

On December 5, 1990, the Debtors filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* The case was subsequently converted into a Chapter 7 action and Jerome E. Robertson was appointed Trustee.

A dispute then arose between the Debtors and the Trustee regarding whether the Debtors or, instead, their Chapter 7 bankruptcy estate ("Estate") was entitled to use for federal income tax purposes a certain feature of the Debtors' federal income tax situation. That feature was the right to carry forward and deduct in current federal tax returns approximately $1.3 million in "passive activity losses" incurred by the Debtors prior to 1990, but which, under section 469 of the Internal Revenue Code of 1986, 26 U.S.C. § 469, had not been allowable as deductions in their federal tax returns for the loss years.

On April 24, 1992, the Trustee filed a Motion to Determine Tax Attributes in the Bankruptcy Court, *see* Appendix to Appellants' Brief ("App.") No. 1, seeking a ruling that only the Estate was entitled to Debtors' passive loss carryovers (or carryforwards) existing as of January 1, 1990. The parties stipulated for purposes of this motion that the Debtors' 1989 tax returns identified eight interests in real property on which debtors had incurred passive activity losses prior to 1990, the total losses amounting to $1,309,175. App. No. 7. They further stipulated that the interest in seven of these eight properties were disposed of by the Debtors in 1990 before they filed their petition in bankruptcy. *Id.*

The sale of these properties was at a gain to Debtors, resulting in a personal tax liability of approximately $2 million. App. No. 8 at 1–2.

On June 5, 1992, the Bankruptcy Court made findings of fact and conclusions of law on the record, App. No. 8, and entered an order on August 13, 1992 that the Estate was the sole owner of all tax attributes identified in the Debtors' 1989 federal tax return, including all passive loss carryovers. App. No. 5. Debtors now appeal from the Bankruptcy Court's order that the Estate is the owner of the passive loss carryovers.

## STANDARD OF REVIEW

█ The parties agree that the issues presented in this appeal are solely questions of law. This court accordingly reviews the order of the Bankruptcy Court *de novo. In re Bubble Up Delaware Inc.*, 684 F.2d 1259, 1262 (9th Cir.1982); *Matter of Torrez*, 63 B.R. 751, 753 (9th Cir. BAP 1986).

## DISCUSSION

This appeal presents the question of whether the Bankruptcy Court erred in finding that the right to carry forward the passive activity losses claimed by Debtors in their 1989 tax returns was owned by the Estate. For the reasons explained below, the court holds that the Bankruptcy Court erred.

### I. *Passive Activity Losses*

The concept of passive activity losses was created by the Tax Reform Act of 1986, which enacted section 469 of the Internal Revenue Code. Prior to the enactment of section 469, taxpayers were able to offset their losses from so-called "tax-shelter" investments against income from other activities. Congress became concerned about the development of a "tax-shelter" industry and the fairness of tax laws which permitted certain taxpayers to escape paying any income tax for years. *See* S.Rep. No. 99–313, 99th Cong., 2d Sess., at 713–14 (1986), *reprinted in* 3 C.B. 713–14 (1986).

Congress enacted section 469 to remedy this situation.

A passive activity is one which involves the conduct of a trade or business in which the taxpayer does not materially participate, as well as activity involving rental of real property. 26 U.S.C. § 469(c)(1) & (2). Under section 469, any losses from passive activities in a taxable year may be applied to offset taxpayer income in that year only from those or other passive activities, but may not be applied to offset income form non-passive activities. 26 U.S.C. § 469(a)(1) & (d)(1). Passive losses that may not be used in the taxable year in which they are incurred because there is not sufficient passive activity income in that year against which to offset them are carried forward to the following year, and to later years, until they are either used against passive activities or until the taxpayer disposes of the passive activity which generated them. 26 U.S.C. § 469(b) & (g).

## II. *The Ruling Below*

In finding that the Estate was entitled to the Debtors' passive activity loss carryovers, the Bankruptcy Court relied on a provision of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 346(i). *See* App. No. 8, at 2–5. That statute provides that:

> In a case under chapter 7, 12, or 11 of this title concerning an individual, the estate shall succeed to the debtor's tax attributes, including—
>
> (A) any investment credit carryover;
>
> (B) any recovery exclusion;
>
> (C) *any loss carryover;*
>
> (D) any foreign tax credit carryover;
>
> (E) any foreign capital loss carryover; and
>
> (F) any claim of right.

11 U.S.C. § 346(i)(1) (emphasis added). However, as the Bankruptcy Court acknowledged, App. No. 8 at 3, subsection 346(i) is expressly "subject to" the Internal Revenue Code. Specifically, the statute provides that:

> Except to the extent otherwise provided in this section, subsections (b), (c), (d), (e), (g), (h), (i), and (j) of this section apply

notwithstanding any State or local law imposing a tax, but *subject to* the Internal Revenue Code of 1954 (26 U.S.C. § 1 *et seq.*)

11 U.S.C. § 346(a) (emphasis added).

Section 1398(g) of the Internal Revenue Code provides that:

> The [bankruptcy] estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—
>
> (1) NET OPERATING LOSS CARRYOVERS—The net operating loss carryover determined under section 172.
>
> (2) CHARITABLE CONTRIBUTIONS CARRYOVER—The carryover of excess charitable contributions determined under section 170(d)(1).
>
> (3) RECOVERY OF TAX BENEFIT ITEMS—Any amount to which section 111 (related to recovery of tax benefit items) applies.
>
> (4) CREDIT CARRYOVERS, ETC.—The carryovers of any credit, and all other items which, but for the commencement of the case, would be required to be taken into account by the debtor with respect to any credit.
>
> (5) CAPITAL LOSS CARRYOVERS—The capital loss carryover determined under section 1212.
>
> (6) BASIS, HOLDING PERIOD, AND CHARACTER OF ASSETS—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.
>
> (7) METHOD OF ACCOUNTING—The method of accounting used by the debtor.
>
> (8) OTHER ATTRIBUTES—Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

26 U.S.C. § 1398(g).

Because section 346(a) makes the provisions of section 346(i) "subject to" the Internal Revenue Code, the Bankruptcy Court acknowledged that if section 346(i)

conflicted with section 1398(g), the latter provision would control. App. No. 8 at 3. The court noted that section 1398(g) does not expressly include passive loss carryovers among the tax attributes that pass to bankruptcy estates, but ruled that in the instant case, passive loss carryovers were "encompassed by the term 'net operating losses' which is specifically enumerated in Section 1398(g)." *Id.* For this reason, the court "harmonized" sections 346(i) and 1398(g), finding no conflict between them. Applying the term "any loss carryover" in section 346(i) to the Debtors' passive loss carryovers before it, it ruled that those tax attributes passed to the Estate. *Id.* at 3–4.

### III. *Analysis on Appeal*

Debtors argue on appeal that the Bankruptcy Court erred because: (1) under sections 1398(g) and 346(i), their passive loss carryovers do not belong to the Estate; and (2) under the circumstances of this case, sections 1398(g) and 469(g), read together, preclude converting Debtors' passive loss carryovers into net operating loss carryovers which pass to the Estate.

### A. *Passive Loss Carryovers Do Not Belong to the Estate Under Applicable Statutes.*

 In arriving at its ruling, the Bankruptcy Court wrote on a relatively clean slate. Prior to that ruling, no other court had determined under Internal Revenue Code section 1398(g) and Bankruptcy Code section 346(i) whether passive activity loss carryovers belong to the bankruptcy estate

or to the debtor.[1] After the Bankruptcy Court's decision, the Bankruptcy Court for the District of Maryland ruled that under these statutes passive activity losses are *not* among the tax attributes that pass to the bankruptcy estate upon a debtor's bankruptcy. *In re Antonelli, Jr.,* 92–2 USTC ¶ 50,619 at 86,176–77, 1992 WL 403097 (Bankr.N.D.Cal. Nov. 6, 1992). While this unpublished opinion from another bankruptcy court is certainly not binding precedent, the court finds that it embodies the better view on the issue on appeal.

Like the Bankruptcy Court below, the *Antonelli* court began its analysis by recognizing that section 346(i) is subject to the controlling provisions of section 1398(g). *Id.* at 86, 176. However, unlike the court below, it concluded that the list of tax attributes contained in section 1398(g) was an exhaustive list and that it does not include passive activity losses. *Id.* The *Antonelli* court correctly reasoned that Congress anticipated the need to add new tax attributes to those specified in section 1398(g), but, in section 1398(g)(8), expressly empowered only the Secretary of the Treasury to make such a determination. *Id.* Because the statute is clear, and the Secretary had not yet added passive activity losses to the tax attributes covered by section 1398(g), the *Antonelli* court refused to read passive activity losses into the statute. *Id.*

The same interpretation of sections 346(i) and 1398(g) was applied earlier by the Court of Claims in *DiStasio v. United*

---

**1.** Neither of the cases cited by the Bankruptcy Court in its ruling is on point and neither supports that court's ruling.

*Matter of Kochell,* 53 B.R. 250 (Bankr. W.D.Wis.1985), *rev'd on other grounds, In re Kochell,* 804 F.2d 84 (7th Cir.1986), contains a footnote stating that section 1398(g) is "an expansion of Bankruptcy Code section 346(i)," *id.* at 252, n. 1, but does not deal with the treatment of passive loss carryovers, which did not exist until 1986. Further, the specific page of the *Kochell* decision cited by the Bankruptcy Court, 53 B.R. at 253, refers to the interpretive maxim *expressio unius est exclusio alterius.* The application of this maxim to section 1398(g) would support the Debtors', not the Trustee's position. Finally, the interpretive problem before the *Kochell* court concerned two subsections of sec-

tion 1398 of the Internal Revenue Code; the *Kochell* court did not consider, as the Bankruptcy Court below had to, the interaction between the Internal Revenue Code and the Bankruptcy Code. Accordingly *Kochell* is not authority for the Bankruptcy Court's ruling.

*In re Wilson,* 49 B.R. 19, 20–21 (Bankr. N.D.Tex.1985), similarly did not deal with passive loss carryovers. That decision noted a correspondence between sections 346(i) and 1398(g), but did not address which section was "subject to" the other, since the estate's right to the tax attribute in that case (a tax refund based on a non-passive loss carry*back*) was squarely controlled by the Supreme Court's decision in *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

*States,* 22 Cl.Ct. 36, 50–52 (1990). There, the court held that a debtor's "claim of right," a tax attribute specifically listed in section 346(i), did not belong to the estate for purposes of federal taxation because section 1398(g) does not expressly enumerate that attribute. *Id.* The Court of Claims rejected the debtor's request that it fashion its own reading of section 1398(g) to include claims of right on the ground that this power was specifically given by Congress to the Secretary, and not to the courts. *Id.* at 52. "Given the clearly listed, specific tax attributes found in [section 1398], coupled with the permissive language of the congressional statute [authorizing the Secretary to prescribe regulations as "necessary or appropriate" to carry out the purpose of the statute]," the *DiStasio* court declined to read additional tax attributes into section 1398(g). *Id.*

An analysis very similar to that of *DiStasio* and *Antonelli* was recently applied by the Bankruptcy Court for the District of New Jersey. That court held in January of this year that a Chapter 7 bankruptcy estate did not succeed to a debtor couple's exclusions under section 121 of the Internal Revenue Code, 26 U.S.C. § 121, which is not specified in section 1398(g). Because the Secretary has not enacted regulations adding section 121 exclusions to the list of attributes under section 1398(g), the estate succeeded only to the tax attributes specifically enumerated in the statute. *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J. Jan. 1, 1993).

The court agrees with the courts in *DiStasio, Antonelli* and *In re Mehr* that unless the Secretary of the Treasury has enacted regulations adding particular tax attributes to the list set forth in section 1398(g), the courts are not empowered to read such additional attributes into the statute. The statute is clear. It contemplates a specific administrative procedure to enlarge the list of federal tax attributes that pass to estates in bankruptcy. Neither the Bankruptcy Court below nor the Trustee provide any reason why that rule should not apply to passive loss carryovers.

It is undisputed that the Department of the Treasury has issued a proposed rule adding passive activity losses to the categories of tax attributes that pass to bankruptcy estates under section 1398(g). *See* 57 Fed.Reg. 53300 (November 9, 1992) (proposing to amend 26 C.F.R. part 1). The proposed rule would apply to bankruptcy cases filed on or after November 9, 1992, and by election of the debtor, to bankruptcy cases filed before that date. *Id.* at 53303. Although hearings have been held on the proposed regulation, final action is not scheduled to be taken by the Secretary until September 1993. 58 Fed.Reg. 24776, 24911 (Apr. 26, 1993). Thus, while it appears that the law on the issue on appeal may soon change, it has not yet done so. Moreover, even if the proposed rule had already become final, absent an election by the Debtors, it expressly would not apply to this case, which was filed before November 9, 1992. Thus, the court finds that Debtors' passive loss carryovers are not among the tax attributes that pass to the Estate under section 1398(g). Because section 346(i) of the Bankruptcy Code is "subject to" section 1398(g), it cannot be read to provide otherwise.

### B. Debtors' Passive Activity Losses Were Not Converted into Net Operating Losses.

Even though sections 1398(g) and 346(i) do not provide for passive activity losses carryovers to pass to bankruptcy estates, the Bankruptcy Court also based its ruling on the Trustee's argument that the particular passive activity losses here were converted by Debtors' sale of seven properties in 1990 into net operating losses, which are expressly among the attributes covered by section 1398(g). This is clear from the court's statement that "in this case, passive loss carry-overs ... are encompassed by the term 'net operating losses,' which is specifically enumerated in Section 1398(g)." App. No. 8, at 3. The Trustee argues that, under section 469(g)(1)(ii) and section 1398(g), the disposition of the property recharacterized the Debtors' pre–1990 passive activity losses into net operating losses which belong to the Trustee. *See* Trustees Reply Brief at 6–7. The court holds that

this argument, and the court's ruling below, are based on a misreading of the statutes.

Under section 469(g) of the Internal Revenue Code, when a taxpayer disposes of his entire interest in a passive activity, and all gain or loss from that activity is recognized,

> the *excess* of ... the sum of ... any loss from such activity for such taxable year (determined after application of subsection (b)) plus ,... any loss realized on such disposition, over ... net income or gain for such taxable year from all passive activities ... shall be treated as a loss which is not from a passive activity.

26 U.S.C. § 469(g)(1)(A) (emphasis added).[2] Thus, in any year that a passive activity is disposed of in its entirety, section 469 first sets off carried over and current passive activity losses generated by that activity against any gains from that activity, including income from the disposition. Any loss left over is then converted into a loss not from a passive activity, that is, a "net operating loss" under 26 U.S.C. § 172.

■ However, contrary to the Bankruptcy Court's and the Trustee's conclusions, this does not mean that the Debtors' passive activity loss carryovers here were recharacterized as net operating losses for purposes of section 1398(g). Section 1398(g) clearly states that, for purposes of an estate's succession to tax attributes, the tax attributes of a debtor shall be "determined as of the first day of the debtor's taxable year in which the [bankruptcy] case commences." In this case, the Trustee does not dispute that the first day of the Debtors' applicable taxable year was January 1, 1990. The property dispositions which the Trustee claims, and the court below apparently found, converted the carried over passive activity losses into net operating losses did not take place until sometime *later* in 1990. Thus, for purposes of section 1398(g), the tax attributes in question could not have been considered net operating losses as of the first day of

the Debtors' taxable year, i.e. January 1, 1990.

■ Moreover, under section 469(g)(1)(A), it is only the *"excess"* of passive activity losses, after they are offset against any gains from the disposition of a debtor's entire interest in the passive activity that generated them, which is converted into net operating loss. The Trustee would have this court read the word "excess" out of the statute, as the court below apparently did, and find that the sale of Debtors' properties converted *all* their passive activity losses into net operating losses expressly covered by section 1398(g). However, the clear language of section 469(g) does not permit such a reading.

Since the sale of the Debtors' passive activities, i.e. the seven properties, yielded a taxable gain of some $2 million, there was no "excess" of passive activity losses over passive activity gains in this case which could have been converted into non-passive losses under section 469(g)(1)(A). Accordingly, the Bankruptcy court erred in finding that the Debtors' passive activity loss carryovers were "encompassed" by the term "net operating losses" in section 1398(g).

### C. *Debtors' Failure to Make a Short Year Election is Irrelevant.*

Finally, the court below found and the Trustee vigorously argues that the Debtors could have avoided assignment of their passive activity loss carryovers to the Trustee, by electing, under 26 U.S.C. § 1398(d)(2), to have their taxable year for bankruptcy purposes begin on the date that they filed this action. The parties agree that had the Debtors made this so-called "short-year" election, they would clearly be entitled to the passive loss attributes because attributes passing to the trustee would be counted only as of the first day of the taxable year in which the bankruptcy was filed. *See* 26 U.S.C. § 1398(d)(2) & (g). As, under section 469, any passive activity losses would be offset against the gains on the sale of the seven properties prior to the

---

**2.** Subsection (b) referred to in subsection (g)(1)(A) provides that passive activity losses

which cannot be used in the year incurred are carried to the next year. 26 U.S.C. § 469(b).

December 5, 1990 filing, there would be no carryovers left to dispute. Be that as it may, in light of the court's ruling that the Trustee was not entitled to the carryovers based on a calendar taxable year beginning on January 1, 1990, the Debtors' failure to make a short-year election in this case is obviously irrelevant.

CONCLUSION

For the foregoing reasons, the August 13, 1992 order of the Bankruptcy Court is REVERSED. The court holds that Debtors James Rueter and Eva Rueter are the sole owners of the disputed $1.3 million in passive activity loss carryovers.

IT IS SO ORDERED.