RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re JAMES L. DALEY, JR.,

                              *Debtor.*

_____

                                         No. 12-6130

JAMES L. DALEY, JR.,

                   *Plaintiff-Appellant*,

        *v.*

ANN REILLY MOSTOLLER,

                  *Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:11-cv-00565—Thomas A. Varlan, District Judge.

Argued: June 13, 2013

Decided and Filed: June 17, 2013

Before: MARTIN and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

_____

### COUNSEL

**ARGUED:** John P. Newton, LAW OFFICE OF MAYER & NEWTON, Knoxville, Tennessee, for Appellant. Al Holifield, HOLIFIELD & ASSOCIATES, PLLC, Knoxville, Tennessee, for Appellee. **ON BRIEF:** John P. Newton, LAW OFFICE OF MAYER & NEWTON, Knoxville, Tennessee, for Appellant. Al Holifield, HOLIFIELD & ASSOCIATES, PLLC, Knoxville, Tennessee, for Appellee. Melanie Franco Nussdorf, STEPTOE & JOHNSON LLP, Washington, D.C., for Amicus Curiae.

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**OPINION**

_____

SUTTON, Circuit Judge.   Generally speaking, the assets in an individual retirement account are off limits from tax collectors and creditors in bankruptcy.  Yet if the owner of a retirement account uses it in a prohibited way, the taxation and bankruptcy protection disappears.  After saving $66,000 in an IRA with Merrill Lynch, James Daley filed a Chapter 7 bankruptcy petition.  The bankruptcy court and the district court thought that Daley had impermissibly used the IRA to extend himself credit by granting Merrill Lynch a lien on the retirement funds to cover any potential future debts to the firm.  We reverse.

I.

Daley opened an IRA with Merrill Lynch by rolling over $64,646 from another financial institution.  Before doing so, Daley signed a Client Relationship Agreement with Merrill Lynch, which contained the following "liens" provision:

> All of your securities and other property in any account—margin or cash—in which you have an interest, or which at any time are in your possession or under your control, shall be subject to a lien for the discharge of any and all indebtedness or any other obligations you may have to Merrill Lynch.

R.1-14 at 11.  By signing the agreement, Daley thus pledged his IRA as security for any future debts to Merrill Lynch.

No debts ever arose, whether at the time Daley opened the account or later. Merrill Lynch, it is true, offers other types of accounts that do carry debt risks, and Daley might well have opened one—say a margin-trading account that allows customers to purchase securities with money borrowed from the broker.  But Daley never opened this kind of account or any other, and he thus never became indebted to Merrill Lynch. Outside of his account with Merrill Lynch, Daley also did not withdraw money from his IRA, borrow from it or use it as collateral for a loan of any sort.

Two years after opening the account, Daley sought protection from his creditors by filing a Chapter 7 bankruptcy petition. Seeking to protect his retirement savings from creditors, Daley invoked the exception for IRAs. *See* 11 U.S.C. § 522(b)(3)(C). The bankruptcy trustee, Ann Mostoller, objected, contending that the IRA lost its exempt status when Daley signed the Client Relationship Agreement and granted the lien to Merrill Lynch. The bankruptcy court and the district court agreed with the trustee. Daley appeals and in the process has received considerable support from an *amicus curiae*, the Securities Industry and Financial Markets Association.

## II.

The Bankruptcy Code explains how to treat a Chapter 7 debtor's assets—what goes to creditors and what remains exempt. The bankruptcy trustee obtains control of the debtor's non-exempt property and distributes it to creditors. 11 U.S.C. § 541(a). A debtor may exempt "retirement funds" if they are in an "account that is exempt from taxation under section" 408 of the tax code. *Id.* § 522(b)(3)(C). Section 408 designates certain trusts as "individual retirement account[s]," 26 U.S.C. § 408(a), and says that "[a]ny individual retirement account is exempt from taxation." *Id.* § 408(e).

An IRA loses its tax-exempt status if the owner "engages in any transaction prohibited by section 4975" of the tax code. *Id.* § 408(e)(2)(A). There are six such transactions, including the one bedeviling Daley: "any direct or indirect" "lending of money or other extension of credit" between the IRA and its owner. *Id.* § 4975(c)(1)(B). The question is whether Daley used his IRA to obtain credit from Merrill Lynch, resulting in an indirect extension of credit between Daley and the IRA.

We think not for several reasons. To start, there is a statutory presumption that his account is exempt. If a retirement fund "has received a favorable determination" from the IRS, "those funds shall be presumed to be exempt from the estate." 11 U.S.C. § 522(b)(4)(A). The trustee concedes that Daley had a favorable determination in effect when he filed his bankruptcy petition. A letter from the IRS stated that Merrill Lynch's IRAs "satisf[ied] the requirements of" the retirement-account exemption. R.1-20 at 8.

In the second place, the exemption does not apply in this setting. Yes, the phrase "any direct or indirect . . . lending of money or other extension of credit" is broad. 26 U.S.C. § 4975(c). "Any" and "direct or indirect" are roomy terms; so too are "extension[s]" of "credit," as other provisions in the United States Code confirm. *See* 18 U.S.C. § 891(1) ("To extend credit means to make or renew any loan, or to enter into any agreement . . . whereby the repayment or satisfaction of any debt or claim . . . may or will be deferred."); 15 U.S.C. § 1602(f) ("The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."); 12 U.S.C. § 84(b)(1) ("[T]he term 'loans and extensions of credit' shall include . . . all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds or repayable from specific property pledged by or on behalf of the person . . . .").

But this breadth of phrasing still demands the "lending of money or other extension of credit between a plan [the IRA] and a disqualified person [Daley]," 26 U.S.C. § 4975(c)(1)(B), and nothing of the sort happened here. The salient reality is that Daley never borrowed from the IRA, and Merrill Lynch never extended credit to Daley based on the existence of the IRA. That a lien in some settings may be granted in connection with an extension of credit does not establish that any loan or other extension of credit occurred here. It did not. Daley never opened any other accounts with Merrill Lynch, margin-trading or otherwise. Daley thus never authorized Merrill Lynch to advance funds or securities, removing the possibility that he could become indebted to the securities firm. The only debtor was Merrill Lynch, which could be asked to deliver the funds to another firm if Daley rolled them over to another account or which could be asked to make payouts to Daley.

The lien provision was contingent on an event that never occurred, and above all could not occur until Daley opened a separate account. It is one thing to say that Merrill Lynch extends credit any time a customer opens a margin-trading account (and thus that a lien on an IRA acts as an extension of credit between the IRA and its owner), even in the absence of actual margin trading; it is quite another to say that Merrill Lynch

extended credit to a nonexistent margin-trading account. Daley's naked lien, stripped of any connection to a credit transaction, was not an extension of credit.

Consistent with this analysis, the IRS in 2011 announced that lien provisions like the one in the Daley-Merrill Lynch contract would not destroy an IRA's tax exempt status. IRS Announcement 2011-81, 2011-52 I.R.B. 1052. The mere existence of a "cross-collateralization agreement," as the IRS calls it, does not by itself disqualify an IRA from exempt status. At most, it is the actual use of such an agreement—and the prohibited extension of credit through it in a later transaction—that might disqualify a retirement account.

In reaching a contrary conclusion, the bankruptcy court invoked an advisory opinion by the Department of Labor, which shares administrative authority over retirement accounts with the IRS. Reorganization Plan No. 4 of 1978, 5 U.S.C. app. 1; *CIR v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 158 (1993) ("[B]oth the Internal Revenue Service and the Department of Labor administer [§ 4975's] prohibited-transaction provisions."). Granting a security interest in an IRA to cover debt in a non-IRA account, the Department said, "would amount to an extension of credit by the IRA to the IRA owner." Emp. Benefits Sec. Admin., U.S. Dep't of Labor, Advisory Op. 2009-03A at 3. But three considerations weaken this authority. The advisory opinion concerns a fact pattern that did not arise here—the opinion of a second account. Advisory opinions from the Department have no precedential effect: "Only the parties described in the request for opinion may rely on the opinion." Advisory Op. Procedure, 41 F.R. 36281, 36283 (Aug. 27, 1976). And the Department at any rate is rethinking its position. The impetus for the IRS announcement, indeed, came when the Department of Labor advised the IRS that it was "considering further action" concerning cross-collateralization liens, "including consideration of a class exemption request expected to be submitted to the" Department. 2011-52 I.R.B. at 1052. The IRS thus decided to treat cross-collateralization liens as tax exempt "[p]ending further action by the" Department. *Id.* The Labor Department's view is in flux, and although an agency opinion of this sort may be "entitled to respect," *Skidmore v. Swift & Co.*, 323 U.S. 134,

140 (1944), even that modest influence is unavailing when the agency's position is a moving target.

The trustee adds that the IRA lien amounted to an extension of credit even if Daley never opened any other accounts because the IRA itself could have placed Daley in debt to Merrill Lynch. But Mostoller never explains why—never explains how Daley's $66,000 retirement account, even after accounting for the automatic withdrawal of ordinary account fees, could itself create debt.

The trustee also notes that the IRS Announcement does not apply to Daley, claiming that his account is not a cross-collateralization agreement. But it is. The IRS Announcement describes such agreements by citing a Department of Labor advisory opinion that quotes a lien provision identical in all relevant particulars to the one Merrill Lynch required Daley to sign. *See* 2011-52 I.R.B. at 1052; U.S. Dep't of Labor, Advisory Op. 2009-03A at 1. The trustee adds that the IRS ruling exempts cross-collateralization agreements only if "there has been no execution or other enforcement pursuant to the agreement against the assets of an IRA account." 2011-52 I.R.B. at 1052. As the trustee sees it, she is executing against Daley's retirement account in the bankruptcy proceeding. But "enforcement pursuant to the agreement" means enforcement by a party to the contract, which is to say Merrill Lynch's execution of the lien against Daley's retirement account. The trustee has no more rights than Merrill Lynch to the assets in the IRA, and Merrill Lynch currently has none.

*Janpol v. CIR*, 101 T.C. 518 (1993), changes nothing. An employer guaranteed loans—loans made by a third party to an employee profit-sharing plan—prompting an inquiry into whether the guarantee amounted to an extension of credit between the employer and its benefit plan under § 4975. Janpol argued that he did not extend credit because the guarantee was conditioned on a loan default, which never occurred. The tax court disagreed, reasoning that a guarantee "is prohibited whether or not the condition for liability to the third party has arisen" because the contract itself creates a "potential for abuse." 101 T.C. at 527. Even if *Janpol* were binding authority, even if "potential for abuse" were the lodestar for construing "extension of credit" and even if the IRS had

not twice blessed Merrill Lynch retirement accounts, Daley's situation is one significant step removed from Janpol's.  Daley never opened any accounts other than his IRA, and there was thus no possibility that he could be subjected to liability.  If Janpol had merely agreed to guarantee against the possibility of future loans, loans that no one ever authorized or made, we think his case would have come out differently.

*Willis v. Menotte* does not help the trustee either.  No. 09-82303, 2010 WL 1408343 (S.D. Fla. April 6, 2010).  Willis did much more than sign a lien provision; he "transferred $700,000.00 from his Merrill Lynch account to a non-IRA account held with his wife, and then transferred the money to a third party in order to fund a real property mortgage." *Id.* at *1.  Even though Willis had a favorable-determination letter from the IRS, the court said, Willis's transfer of funds from his IRA went beyond the approved form of the account. *Id.* at *5.  In marked contrast, other than signing the papers to open the retirement account, Daley authorized no remotely comparable transactions.

In the final analysis, Mostoller has not rebutted the statutory presumption that Daley's retirement account is exempt from bankruptcy.  Daley signed a boilerplate lien provision as a requirement of opening an account that the IRS had approved.  He made no other transactions with the account, and because he opened no other accounts there was no possibility that the lien would amount to anything.  The agency with ultimate authority to administer § 4975, the Department of Labor, has given no definitive interpretation of § 4975 in this context.  And the agency that shares enforcement authority over § 4975, the IRS, has determined it will consider accounts like Daley's exempt.  On this record, Daley did not use his retirement account to extend himself credit.

III.

For these reasons, we reverse.