2021 IL App (1st) 191781-U

No. 1-19-1781

Order filed March 25, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JAMES M. CASSIDY, an individual, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 18 CH 09999 |
| | ) | |
| SIGNATURE BANK, an Illinois chartered banking association, | ) | Honorable |
| | ) | Pamela M. Meyerson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

ORDER

¶ 1    *HELD*: On cross-motions for summary judgment, the circuit court did not err in granting summary judgment in favor of plaintiff-appellee James M. Cassidy, on Counts I and II of his complaint and in denying summary judgment to defendant-appellant Signature Bank.

¶ 2    Cassidy filed a four-count complaint against Signature Bank in the circuit court of Cook County. In Counts I and II, which are the only counts at issue on appeal, Cassidy sought damages against Signature Bank for breach of contract relating to two Agreements. Cassidy alleged that Signature Bank breached the terms of the agreements when the bank applied Individual Retirement

Account (IRA) funds in certificates of deposit to setoff debt that his company owed the bank. The circuit court entered summary judgment for Cassidy as to Counts I and II of his complaint and dismissed Counts III and IV as moot. We affirm.[1]

¶ 3                                       I. BACKGROUND

¶ 4     James M. Cassidy owned and controlled Cassidy Brothers, Inc. (CBI), an Illinois Corporation that operated as a drywall contractor before dissolving in October 2014. Beginning January 2012, CBI initiated a series of loan transactions with Signature Bank.

¶ 5                                       A. Promissory Notes

¶ 6     On January 9, 2012, CBI executed two promissory notes in the principal amounts of $973,000 and $2,500,000, respectively, with Signature Bank as the lender. The promissory notes were executed in conjunction with an asset based business loan agreement and were secured by a commercial guaranty in favor of Signature Bank.

¶ 7            B. IRA No. 6000001258 (1258) & Irrevocable Letter of Credit No. 1128

¶ 8     Approximately one year later, on January 11, 2013, Cassidy, using funds rolled over from an IRA with ING Bank, opened an IRA with Signature Bank. This IRA, account number 6000001258 (1258), was opened with a deposit of $150,000.

¶ 9     On January 25, 2013, Signature Bank issued irrevocable letter of credit No. 1128, with CBI as the applicant and Allegheny Casualty Company as the beneficiary. The letter of credit provided

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

for draws up to $126,000. In connection with the letter of credit, Signature Bank and CBI executed a business loan agreement, whereby Signature Bank agreed to make advances to CBI not to exceed $126,000, for the sole purpose of satisfying any draw requests on the letter of credit. The business loan agreement was evidenced by a promissory note, secured by a commercial guaranty.

¶ 10　　On the same date, January 25, 2013, Signature Bank required Cassidy to execute an "assignment of deposit account" agreement (Assignment-Agreement), relating to account number 1258. The Assignment-Agreement purported to grant Signature Bank a security interest in IRA 1258.

¶ 11　　　　　　C. IRA No. 6000001274 (1274) & Irrevocable Letter of Credit No. 1129

¶ 12　　On February 25, 2013, again, using funds rolled over from an IRA with ING Bank, Cassidy opened a second IRA with Signature Bank. This IRA, account number 6000001274 (1274), was opened with a total deposit of $150,000.

¶ 13　　On the same date, February 25, 2013, Signature Bank issued irrevocable letter of credit No. 1129, with CBI as the applicant and Allegheny Casualty Company as the beneficiary. The letter of credit provided for draws up to $150,000. In connection with the letter of credit, Signature Bank and CBI executed a business loan agreement, whereby Signature Bank agreed to make advances to CBI not to exceed $150,000, for the sole purpose of satisfying any draw requests on the letter of credit. The business loan agreement was evidenced by a promissory note, secured by a commercial guaranty.

¶ 14   Also on the same date, Signature Bank required Cassidy to execute an "assignment of deposit account" agreement (Assignment-Agreement), relating to account number 1274. The Assignment-Agreement purported to grant Signature Bank a security interest in IRA 1274.

¶ 15                              D. Default of Promissory Notes and Setoff

¶ 16   In September 2013, CBI ceased making payments on the two 2012 promissory notes thereby causing CBI to be in default on these notes. As a result of CBI's default on the 2012 notes, Signature Bank applied the IRA funds as a setoff against the debt incurred by CBI on these earlier notes.

¶ 17                              E. Federal Bankruptcy Court

¶ 18   On May 20, 2015, Cassidy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.* (2010)), and subsequently converted his Chapter 11 case into a liquidation proceeding under Chapter 7 of the Bankruptcy Code. On September 2, 2015, Cassidy filed an adversary compliant in the bankruptcy proceeding against Signature Bank. The adversary complaint alleged that Signature Bank had breached the Assignment-Agreements by using the IRA funds as a setoff to CBI's accrued debt under the two 2012 promissory notes. Cassidy further amended his bankruptcy filings claiming an exemption against Signature Bank "with respect to improper setoff of account(s) which qualify as exempt IRA account(s) and/or exempt ERISA qualified plan(s) which plan(s) are not property of the estate."

¶ 19   The Bankruptcy Court granted the Chapter 7 discharge and the case was closed. The court

also, *sua sponte*, dismissed Cassidy's adversary complaint against Signature Bank without prejudice. The court finding that it lacked subject matter jurisdiction because the bankruptcy was subject to discharge and the case closed.

¶ 20                                    F. Circuit Court of Cook County

¶ 21    On August 7, 2018, Cassidy filed a four-count complaint against Signature Bank in the circuit court of Cook County. In Counts I and II, Cassidy sought damages against Signature Bank for breach of contract relating to the Assignment-Agreements. Cassidy alleged that Signature Bank breached the terms of the agreements when the bank applied the IRA funds to setoff the debt that CBI owed.

¶ 22    Counts III and IV were pled in the alternative. Count III sought a declaratory judgment that Signature Bank's application of the IRA funds to setoff CBI's debt was improper because the funds were exempt from setoff. In support of this assertion, Cassidy pointed to the express language in the Assignment-Agreements, which provided in relevant part that the right of setoff "does not include any IRA." Count IV requested a preliminary and permanent injunction requiring Signature Bank to return to Cassidy the IRA funds the bank used to setoff the debt owed by CBI.

¶ 23    On May 20, 2019, the circuit court heard the parties' cross-motions for summary judgment with respect to the claims asserted in Cassidy's complaint, and after the hearing, the court took the matter under advisement. On July 30, 2019, the circuit court entered an order: (1) granting Cassidy's motion for summary judgment as to Counts I and II of his complaint; (2) denying

Signature Bank's motion for summary judgment; (3) entering judgment in favor of Cassidy and against Signature Bank in the aggregate amount of $301,655.06, plus costs; and (4) dismissing Counts III and IV of the complaint as moot. Signature Bank appeals.

¶ 24                                    II. ANALYSIS

¶ 25    Signature Bank contends that the circuit court erred in granting summary judgment in favor of Cassidy on Counts I and II of his complaint for breach of contract relating to the Assignment-Agreements. In support of this contention, Signature Bank asserts that the funds in the IRAs were assigned and pledged as collateral security for the loans and thus were no longer exempt under Illinois law, and therefore, it properly exercised its right to apply these funds to CBI's debt. Cassidy responds that Signature Bank improperly and unlawfully setoff against his retirement funds on deposit with the bank.

¶ 26    Before we reach the merits of this appeal, we first address this court's jurisdiction.

¶ 27                                 A. Jurisdiction

¶ 28    We initially note that Signature Bank inaccurately contends that we have jurisdiction to review the circuit court's order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), which provides this court with authority to review a "final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a).

¶ 29    Cassidy and Signature Bank are the only parties involved in this litigation. The circuit court

6

disposed of all their claims at summary judgment. Therefore, Signature Bank's citation to Rule

304(a) as a basis for this court's jurisdiction is inaccurate. Nevertheless, we have jurisdiction over

this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which provides that

"[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301.

"A judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case or

on some definite and separate part of the controversy." *Dubina v. Mesirow Realty Development,

Inc.*, 178 Ill. 2d 496, 502 (1997). The circuit court's order of July 30, 2019, was the final,

appealable judgment entered in this matter. Thus, we have jurisdiction to review the circuit court's

judgment under Supreme Court Rule 301.

¶ 30                                    B. Standard of Review

¶ 31     Turning to the merits, we note that the parties filed cross-motions for summary judgment.

When parties file cross-motions for summary judgment they agree that there are only questions of

law to decide and they invite the court to decide the issues based upon the record. *Pielet v. Pielet*,

2012 IL 112064, ¶ 28; *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 308-09

(2010). Summary judgment should be granted if the pleadings, depositions, admissions on file,

and affidavits, if any, show that there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Outboard Marine

Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). On appeal from an order

granting summary judgment, the standard of review is *de novo. Outboard Marine Corp.*, 154 Ill.

7

2d at 102.

¶ 32     In order to determine whether the circuit court properly granted summary judgment in favor of Cassidy, we must interpret relevant provisions of the Assignment-Agreements, which are contracts. See, *e.g*., *O'Brien v. Argo Partners, Inc.,* 736 F. Supp. 2d 528, 534 (E.D.N.Y. 2010) ("Assignment Agreements are contracts"). We must also construe section 12-1006(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/12-1006(a) (West 2012)), which sets forth Illinois' exemption for IRAs. And we must construe section 408(e)(4) of the Internal Revenue Code (26 U.S.C. § 408(e)(4)), which provides that an individual retirement account can lose its tax-exempt status if any portion of the account is used as security for a loan.

¶ 33     The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. *Bayer v. Panduit Corp*., 2016 IL 119553, ¶ 18. The best indicator of that intent is the express language of the statute, which should be given its plain and ordinary meaning. *Rogers v. Imeri*, 2013 IL 115860, ¶ 13. In interpreting a statute, we must read the statute as a whole, considering the relevant provisions in their context and within the broader framework of the act of which they are a part. *Bayer*, 2016 IL 119553, ¶ 18. Similarly, when interpreting a contract, the court's primary goal is to ascertain the intent of the parties at the time of contracting. *Founders Insurance Company v. American County Insurance Company*, 366 Ill. App. 3d 64, 69 (2006). The plain meaning of the contract's language is usually the best indicator of the parties' intent. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007).

Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as whole, considering each provision in light of the other provisions. *Id*. If the words in the contract are clear and unambiguous, they must be given their plain and ordinary meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). The interpretation of a contract and the construction of a statute both involve questions of law subject to *de novo* review. *Founders Insurance Company*, 366 Ill. App. 3d at 69. Applying a *de novo* standard of review, we proceed to address the issues raised on appeal, beginning with a brief overview of the relationship a bank has with the depositor of an individual retirement account in Illinois.

¶ 34                                    III. Individual Retirement Account

¶ 35     An individual retirement account, commonly called an IRA, is defined in the Internal Revenue Code as a "trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C.A. § 408(a). Funds in an IRA are presumed to be exempt from the bankruptcy estate if the funds have "received a favorable determination" from the Internal Revenue Service. *In re Daley*, 717 F.3d 506, 508 (6th Cir. 2013).

¶ 36     Under Illinois law, IRA accounts are considered to be "special deposits" which create a trust relationship between the depositor and the bank. *First National Bank of Blue Island v. Philp*, 106 Ill. App. 3d 360, 362 (1982). "Instead of creating the relationship of debtor and creditor, depositing money in an IRA in the state of Illinois creates a bailment." *Masi v. Ford City Bank & Trust Company*, 779 F.2d 397, 399 (7th Cir. 1985) (citing *Mid-City National Bank of Chicago v.*

*Mar Building Corp*., 33 Ill. App. 3d 1083, 1089-90 (1975)). "This relationship is protected in Illinois and cannot be reached in satisfaction of a depositor's general indebtedness." *Masi*, 779 F.2d at 399; see also *First National Bank of Blue Island*, 106 Ill. App. 3d at 362 (proceeds of IRA were not subject to setoff against general indebtedness of decedent depositor).

¶ 37           IV. Section 12-1006 of the Illinois Code of Civil Procedure

¶ 38    Section 12-1006 of the Code (735 ILCS 5/12-1006(a) (West 2012)) was adopted on August 30, 1989 and became effective on the same date. See Phillip H. Hamilton, *Exclusion in Bankruptcy of Qualified Retirement Plans in Illinois*, 80 Ill. B.J. 86 (2019). "[S]ection 12-1006 is intended to protect pensions, annuities, benefits, distributions, payments, and refunds of contributions against judgment creditors." *Id*., at 90; see also *In re Marriage of Branit*, 2015 IL App (1st) 141297, ¶ 30 (section 12-1006 is "aimed at protecting retirement assets"); *Auto Owners Insurance v. Berkshire*, 225 Ill. App. 3d 695, 699 (1992) ("exemption statutes are to be construed liberally to protect debtors").

¶ 39    Section 12-1006(a) of the Code provides that a debtor's interest in a retirement plan is exempt from "judgment, attachment, execution, distress for rent, and seizure for satisfaction of debts" as long as the plan "is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended." 735 ILCS 5/12-1006(a) (West 2012). A "retirement plan" expressly includes an "individual retirement account." 735 ILCS 5/12-1006(b)(3) (West 2012).

¶ 40    Signature Bank contends that the section 12-1006(a) exemption does not apply in this case because the statute's use of the terms "judgment," "attachment," "execution," and "seizure" all imply that funds are being "taken" from a debtor. Signature Banks asserts that nothing was "seized" or taken from Cassidy. Signature Bank argues that when it applied the IRA funds to the CBI indebtedness, it was not exercising a right to setoff, but was rather exercising its rights under the Assignment-Agreements. We disagree with this reasoning.

¶ 41    We find that Signature Bank's application or seizure of the IRA funds to reduce the debt that CBI owed constituted a setoff of that debt. A bank setoff occurs when a bank applies funds in a depositor's account to satisfy a debt owed to the bank. See, *e.g.*, *First National Bank of Deerfield v. Lewis*, 186 Ill. App. 3d 16, 19-20 (1989). This is precisely what happened in this case. Signature Bank applied the IRA funds to setoff CBI's debt.

¶ 42    As mentioned above, under section 12-1006, a debtor's interest in a retirement plan is exempt from judgment for the satisfaction of debts if the retirement plan is intended in good faith to qualify as a retirement plan under the Internal Revenue Code. 735 ILCS 5/12-1006(a) (West 2012); *Auto Owners Insurance*, 225 Ill. App. 3d 697.

¶ 43    Here, Cassidy presented evidence that at all relevant times subsequent to the creation of the IRAs, he intended in good faith that the IRAs qualify as individual retirement accounts under the Internal Revenue Code and that it was reasonable for him to believe that this intention was shared by Signature Bank.

¶ 44    For example, the record shows that on January 11, 2013, Signature Bank, through its vice president, Ella Riordan-Pecheco in her capacity as "custodian" executed a document establishing IRA 1258, which identifies the IRA with an "IRA ACCOUNT NUMBER 6000001258" and which identifies Signature Bank as the "CUSTODIAN" of IRA 1258. Signature Bank also executed a document entitled "Traditional IRA Designation of Change of Beneficiary" relating to IRA 1258, which: (1) identifies IRA 1258 as an IRA; (2) identifies Cassidy as the "IRA Owner"; and (3) identifies Cassidy's wife, Patricia Cassidy, as the beneficiary of IRA 1258. Riordan-Pecheco also executed the IRA 1258 Beneficiary Designation on Signature Bank's behalf in her capacity as a vice president of Signature Bank, and the bank is referred to on the signature line as "Custodian/Trustee" of IRA 1258. In addition, Tim Hanson, a vice president of commercial lending at Signature Bank, who managed the CBI portfolio, testified under oath at his deposition that IRA 1258 was maintained as a retirement account.

¶ 45    Moreover, at all times following the rollover of IRA 1258, Signature Bank treated the IRA as an exempt individual retirement account and held the account out to Cassidy as an individual retirement account. Signature Bank regularly sent Cassidy interest earning statements that illustrated the interest earned by IRA 1258. Those statements bore the words "this statement represents the activity on your *retirement account*." (Emphasis added.) The same documents were executed and delivered to Cassidy with respect to IRA 1274.

¶ 46    Given this evidence, we agree with the circuit court's determination that the "uncontested

facts" show that Cassidy intended in good faith for his retirement accounts "to qualify as retirement accounts under [IRA] rules." The critical question here is whether Cassidy's conduct in entering into the Assignment-Agreements with Signature Bank and pledging the IRA funds as collateral to secure CBI's debt, caused the funds to lose their status as exempt retirement funds.

¶ 47    Signature Bank contends that even if the funds in Cassidy's individual retirement accounts were exempt under section 12-1006(a) of the Code, the funds lost their exempt status pursuant to section 408(e)(4) of the Internal Revenue Code (26 U.S.C. § 408(e)(4)), when Cassidy pledged the funds as collateral to secure the CBI indebtedness. Signature Bank therefore argues that it did not breach the Assignment-Agreements when it exercised its right to apply these funds to CBI's debt.

¶ 48                    V. Section 408(e)(4) of the Internal Revenue Code

¶ 49    Signature Bank's contentions require this court to construe section 408(e)(4) of the Internal Revenue Code. The construction of a statute is guided by familiar principles. The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23. The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 22. A statute is viewed as a whole, with all relevant parts considered. *Sylvester v. Comm'n*, 197 Ill. 2d 225, 232 (2001). Of particular importance here is the statutory rule of construction which provides that in construing a statute, the court may consider the reason for the law, the problems sought to be remedied, and the

13

purposes to be achieved. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010).

¶ 50    Section 408(e)(4) provides that "[i]f, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual." 26 U.S.C. § 408(e)(4). The purpose of section 408(e)(4) is to "prevent taxpayers from taking advantage of the tax sheltering potential of IRA's while continuing to enjoy the benefits of those assets." *In re Kochell*, 53 B.R. 250, 252 (Bankr. W.D. Wis. 1995), *rev'd on other grounds*, *In re Kochell*, 804 F.2d 84 (7th Cir. 1986).

¶ 51    In this case, the federal legislature's concerns relating to the taxability of IRAs, which motivated the enactment of section 408(e)(4) of the Internal Revenue Code, were not implicated when Cassidy pledged the IRA funds. Instructive in this regard is the decision of the Sixth Circuit Court of Appeals in *In re Daley*, 717 F.3d 506 (6th Cir. 2013).

¶ 52    In *Daley*, the debtor opened an IRA with Merrill Lynch by rolling over funds from another financial institution. *Id*. at 507. Before opening the IRA with Merrill Lynch, the debtor signed a client relationship agreement which provided that any money the debtor held in any account would be subject to a lien if he became indebted to Merrill Lynch. By signing the agreement, the debtor effectively pledged his IRA as security for any future debt to Merrill Lynch. Two years after opening the IRA with Merrill Lynch, the debtor filed for Chapter 7 bankruptcy protection. *Id*. at

507-08. In an effort to protect his retirement savings from creditors, the debtor invoked an exception for IRAs provided for in a section of the Bankruptcy Code. *Id.* at 507-08. The bankruptcy trustee objected and contended that the IRA lost its exempt status when the debtor signed the client relationship agreement providing for a lien on the IRA for any debt owed to Merrill Lynch. The bankruptcy court and the district court agreed with the trustee and denied the exemption. The debtor appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit Court reversed the bankruptcy court and the district court.

¶ 53    The Sixth Circuit Court determined that the debtor's IRA did not lose its exempt status under section 408(e)(4) when he signed the lien agreement with Merrill Lynch. The court reasoned that it was "the actual use of such an agreement – and the prohibited extension of credit through it in a later transaction – that might disqualify a retirement account." *Id.* at 509. The prohibited transaction at issue in *Daley* was "any direct or indirect *** lending of money or other extension of credit" between the IRA and its owner, *i.e.*, the debtor. 26 U.S.C. § 4975(c)(1)(B). The court held that the debtor did not engage in such a transaction because he never borrowed from the IRA and Merrill Lynch did not extend credit to him based upon the existence of the IRA. *Id.* at 508-09. In this regard, the court found that "[t]he lien provision was contingent on an event that never occurred." *Id.* at 509. The court asserted that the debtor's "naked lien, stripped of any connection to a credit transaction, was not an extension of credit."

¶ 54    The IRA pledges at issue in this case are similar to the lien provision at issue in *Daley* in

that both were contingent upon transactions which never occurred. Signature Bank required Cassidy to pledge his IRA funds as collateral to secure his reimbursement obligations under the letters of credit in the event CBI drew on the letters of credit and then subsequently defaulted. However, these events never occurred because CBI never drew on the letters of credit and therefore the IRA funds were never used in a transaction prohibited by section 4975 of the Internal Revenue Code (26 U.S.C.A. § 4975). As a result, the IRA funds did not lose their exempt status under section 408(e)(4) of the Internal Revenue Code when Cassidy entered into the Assignment-Agreements with Signature Bank and pledged the funds as collateral to secure CBI's debt.

¶ 55    In addition, we also note that the party holding the security interest in the pledged property must have some recourse against the property in the event of a default. *Jones v. Kvamme*, 481 N.W.2d 94, 97 (Minn. App. 1992). Black's Law Dictionary defines "recourse," *inter alia*, as "[t]he right to repayment of a loan from the borrower's personal assets, not just from the collateral that secured the loan." Black's Law Dictionary 1528 (11TH ed. 2019).

¶ 56    In this case, Signature Bank did not have a right of recourse to the funds held in Cassidy's individual retirement accounts because the Assignment-Agreements expressly provided that the bank's right of setoff "does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law." Signature Bank had no greater rights in Cassidy's individual retirement accounts than was granted by the Assignment-Agreements. Because the setoff provisions in the Assignment-Agreements prohibited Signature Bank's setoff of the funds

held in the individual retirement accounts, the bank had no recourse with respect to those retirement accounts. As a result, the pledges in the Assignment-Agreements were not enforceable against Cassidy's individual retirement accounts.

¶ 57    This court is not persuaded by the cases Signature Bank cites in support of its arguments. Signature Bank relies on *Kearney Construction Company LLC v. Travelers Casualty & Surety Company of America*, 2017 WL 4277164 (M.D. Fla. Aug. 16, 2017) (affirmed 2019 WL 5957361 (11th Cir. 2019)); *In re Roberts*, 326 B.R. 424 (Bankr. S.D. Ohio 2004); *XL Specialty Insurance Co. v. Truland*, 2015 WL 2195181 (E.D. Va. May 11, 2015); and *Lewis v. Bank of America, N.A.*, 343 F.3d 540 (5th Cir. 2003).

¶ 58    However, all of the cases cited above are distinguishable from the present case for two reasons. First, none of the cases involve agreements containing express language providing that the lender's right of setoff does not include individual retirement accounts. Second, and finally, none of the cases discuss whether the debtors engaged in a transaction prohibited by section 4975 of the Internal Revenue Code (26 U.S.C.A. § 4975).

¶ 59    Signature Bank next argues that Cassidy's individual retirement accounts were specifically excluded from the right of setoff provision and therefore it properly exercised its right to apply the funds in these accounts to setoff the debt that CBI owed to the bank. In support of this argument, Signature Bank points to language in the Assignment-Agreements which define the IRA funds as an "Account," with the word "account" designated with an upper case "A." Signature Bank notes

17

that the right of setoff provision references "accounts" using a lower case "a." Signature Bank contends that because the Assignment-Agreements define the IRA funds as an "Account" with an upper case "A," these IRA funds were specifically excluded from the right of setoff provision which applies to "accounts" with a lower case "a."

¶ 60    However, as the circuit court properly noted, the problem with Signature Bank's argument is that the Assignment-Agreements do not make a distinction with respect to the word "accounts," when the word begins with either an upper or lower case "a." In this regard the circuit court stated:

> "In other words, [Signature Bank] argues that the provision on setoffs applies only to little "a" accounts and not to big "A" accounts which were defined as the specific IRA accounts that were pledged as collateral here.
>
> The problem with that is that the assignment agreements don't make that distinction. They don't say in the setoff section we won't seize any IRA accounts except for the big "A" accounts that have been pledged.
>
> No, they just say that we can't seize IRAs. And we know that [Signature Bank] drafted these agreements. So to the extent there is any ambiguity between the setoff provision and the rights and remedies on default provision, that ambiguity is resolved in favor of [Cassidy] who was the non-drafter."

¶ 61    We agree with the reasoning of the circuit court. Application of the right of setoff provision is not limited to "accounts" with a lower case "a." Rather, the right of setoff provision expressly

18

defines the accounts within its scope of application as "all Grantor's accounts with Lender (whether checking, savings, or some other account)." In addition, although the circuit court did not find any ambiguities in the Assignment-Agreements, we agree with the court's comment that to the extent there are any ambiguities between the right of setoff provision and the default provision, those ambiguities are construed against Signature Bank as the drafter of the provisions. The circuit court's statement is consistent with well-established case law which holds that "any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998).

¶ 62 This leads us to consider the following question posed by Signature Bank, namely: why did Cassidy enter into the Assignment-Agreements and pledge the IRA funds in his certificates of deposit at the bank as collateral to secure the CBI indebtedness? We believe the answer is clear. Signature Bank is a sophisticated lender who drafted the Assignment-Agreements and no doubt insisted upon Cassidy's execution of these boilerplate documents as a condition of extending the loans to his company CBI. In this regard, the Assignment-Agreements were "part of an enticement package necessary" for Cassidy to obtain the loans. See, e.g., *Kvamme*, 481 N.W.2d at 97 ("perhaps [the] agreement was part of an enticement package necessary to obtain the loan on behalf of the company. Such a use of an IRA, however, is not prohibited"). Under these circumstances it is understandable that Cassidy would agree to enter into the Assignment-Agreements in an effort to keep his company financially solvent.

¶ 63    Signature Bank finally contends that Cassidy's failure to take a minimum distribution from the IRAs following his 70th birthday pursuant to 26 CFR 1.408-2(b)(6)(v), evidences that he did not treat the IRAs as "exempt" accounts or retirement funds. We disagree for two reasons.

¶ 64    First, any purported failure of Cassidy to take a minimum distribution from the IRAs following his 70th birthday, has no impact on the qualification of the IRAs for exemption under the applicable provisions of the tax code. Instead, the failure of an IRA owner to take a required minimum distribution results only in a tax penalty. 26 U.S.C. § 4974(a). Moreover, even if the minimum distribution is not taken, the IRA owner may seek waiver of the tax penalty under certain circumstances. 26 U.S.C. § 4974(d). However, the IRA remains exempt.

¶ 65    Second, the record does not support Signature Bank's contention that Cassidy "never took any minimum distribution as required by the Tax Code." The record shows Cassidy's date of birth as June 22, 1942, meaning he was 70 and-a-half years old on December 22, 2012, prior to the rollover of the IRAs to Signature Bank. The IRAs at issue, IRA 1258 and IRA 1274, were rolled over from Cassidy's prior servicer ING Bank, respectively, on or around January 11, 2013 and February 25, 2013. Signature Bank offers no facts in the record to support its contention that Cassidy did not take his minimum distribution in 2012 or 2013, prior to the time that Signature Bank commenced servicing the IRAs.

¶ 66                                    VI. CONCLUSION

¶ 67    We find that the funds in Cassidy's individual retirement accounts were exempt under

section 12-1006(a) of the Code where he presented documentary evidence showing that the accounts were intended in good faith to qualify as retirement plans under the applicable provisions of the Internal Revenue Code.

¶ 68    We also find that the retirement funds did not lose their exempt status under section 26 U.S.C. § 408(e)(4) of the Internal Revenue Code when Cassidy pledged the funds as collateral to secure the CBI indebtedness because: (1) the funds were never used in a transaction prohibited by section 4975 of the Internal Revenue Code (26 U.S.C.A. § 4975); and (2) the setoff provisions in the Assignment-Agreements prohibited Signature Bank's setoff of the funds held in the retirement accounts, and therefore the bank had no recourse with respect to those retirement accounts, and as a result, the pledges in the Assignment-Agreements were not enforceable against the retirement accounts.

¶ 69    Finally, we find that because Signature Bank had no recourse with respect to the retirement accounts, the bank breached the Assignment-Agreements when it applied the funds in retirement accounts to setoff CBI's indebtedness.

¶ 70    For the foregoing reasons, the circuit court's ruling granting summary judgment in favor of Cassidy on Counts I and II of his complaint for breach of contract relating to the Assignment-Agreements and denying Signature Bank's motion for summary judgment on Counts I and II of the complaint is affirmed.

¶ 71    Affirmed.